IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Robbie Collins, | ) | Civil Action No. 9:18-3282-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Warden Stephon, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is the report and recommendation ("R & R") of the Magistrate Judge (Dkt. No. 133) recommending that Defendants' motions for summary judgment be granted. For the reasons set forth below, the Court adopts the R & R as the Order of the Court and grants Defendants' motions.

I. **Background**

Plaintiff Robbie Collins is an incarcerated person proceeding *pro se* to bring a claim under 42 U.S.C. § 1983, alleging that Defendants violated the Eighth Amendment by denying him outdoor recreation time and post-operative prescription pain medication at Broad River Correctional Institution ("BCI") in the South Carolina Department of Corrections ("SCDC"). Plaintiff alleges that these acts of deliberate indifference "resulted in deterioration of previous injury" as well as "bed soreness and nasal inflammation," for which he seeks $200,000 in damages for pain and suffering. (Dkt. No. 1 at 4-9.) The Court previously adopted the Magistrate Judge's R & R to deny Plaintiff's motions for injunctive relief. (Dkt. No. 58.) Defendants now move for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act prior to bringing this

lawsuit.[1] Plaintiff filed objections to the R & R (Dkt. Nos. 143, 144), to which Defendants replied (Dkt. No. 145).

## II. Legal Standard

### A. Review of R & R

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where the plaintiff objects to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Where the plaintiff has not objected to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B. Motion for Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those

---

[1] Defendants Stephon, Washington, Werre and Olds moved together (Dkt. No. 103), to which Plaintiff responded (Dkt. No. 131) and those Defendants replied (Dkt. No. 127). Defendant Lee separately moved (Dkt. No. 109), to which Plaintiff responded (Dkt. Nos. 123, 125, 131) and Lee replied (Dkt. No. 129). Defendant Cooper also separately moved (Dkt. No. 110), to which Plaintiff responded (Dkt. Nos. 123, 124, 131) and Cooper replied (Dkt. No. 128).

facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## C. The Prison Litigation Reform Act ("PLRA") and Exhaustion Requirement

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit under § 1983. 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 677 (4th Cir. 2005). The administrative remedies are dictated by the prison. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). A prison grievance procedure is "available" if it is "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016).

The PLRA, therefore, has a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The prisoner bears the burden

of demonstrating that an administrative remedy is unavailable. *See Graham v. Gentry*, 413 F.App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (internal citation omitted). Specifically, an administrative remedy is not "available"—meaning, the remedy, "although officially on the books, is not capable of use to obtain relief"—in at least three circumstances. *Ross*, 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Meaning, the "administrative officials have apparent authority, but decline ever to exercise it." *Id.* Second, a remedy is unavailable where the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Last, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In this situation, "officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to trip up all but the most skillful prisoners" or threaten the inmate. *Id.* (internal quotation marks and citation omitted). Absent such evidence that the administrative remedy was unavailable, failure to exhaust the administrative remedies will bar actions filed under federal law. *See Woodford v. Ngo*, 548 U.S. 81 (2006).

SCDC employs an inmate grievance process that, with limited exceptions, consists of three steps. First, the inmate must attempt an informal resolution by submitting a Request to Staff Form ("RTS Form") within eight working days of the incident. If the incident involves

allegations of criminal activity, an RTS Form is not required, but the inmate must file a Form10-5 Step 1 Grievance within five day of the alleged criminal activity. Otherwise, within eight days of receiving a response to the RTS Form, the inmate must submit a Step 1 Grievance Form that attaches the answered RTS Form. If the RTS Form is not attached, the Step 1 Grievance Form will be returned to the inmate, who has five days to resubmit with the required attachment. Next, if the inmate is not satisfied with the response to his Step 1 Grievance Form, he has five days from receiving the response to appeal by submitting a checked-box on the Step 1 Grievance Form and a Step 2 Grievance Form. The SCDC's response to the Step 2 Grievance Form is considered the agency's final determination, which the inmate may appeal to the South Carolina Administrative Law Court. (Dkt. No. 109-4.)

### III. <u>Discussion</u>

After examination of the record, the R & R and objections, the Court finds that the Magistrate Judge thoroughly addressed the issues and correctly concluded that Defendants are entitled to summary judgment because they demonstrated that Plaintiff did not exhaust the available administrative remedies prior to bringing suit.

The record consists of: seven affidavits submitted by Defendants, three Step 1 Grievance Forms, the SCDC Grievance Procedure, two SCDC Provider forms, and a letter sent by Plaintiff to Regional Director Willie Davis.[2] Most relevant to the administrative exhaustion analysis are

---

[2] The SCDC Provider Visit form is dated August 9, 2018 and reflects intake notes of Plaintiff visit the provider because "he has been having worse pain and spasms since lockdown and inability to exercise properly." (Dkt. No. 123-1 at 5.) The SCDC Provider Referral Communication form appears to also be dated August 9, 2018 and approves referring Plaintiff to an orthopedic surgeon for "painful tender left shoulder and left thigh, s/p femoral rod left thigh." (Dkt. No. 123-1 at 6.) In Plaintiff's July 29, 2019 letter to Regional Director Willie Davis, he states that he is "not receiving showers 3x a week but once every (2) weeks, no outside recreation." (Dkt. No. 126-1.)

the Step 1 Grievance Forms. First, Step 1 Grievance Form BRCI-0549-18 (supplied by Plaintiff) is dated July 17, 2018 and contains Plaintiff's complaint that he is "not receiving 1 hour of recreation" and "need[s] fresh air and exercise," impacting his degenerative bone disease and causing bed soreness.[3] On July 31, 2019, the Warden denied this grievance on the basis of the SCDC policy governing recreation being provided "consistent with security," which Plaintiff checked he did not accept and wished to appeal on August 2, 2018. (Dkt. No. 123-1 at 9-10.) There is no record evidence that Plaintiff included a Step 2 Grievance Form when he checked the box to appeal the initial denial.

Next, Step 1 Grievance Form BRCI-0887-18 (supplied by Plaintiff and Defendants) is dated October 29, 2018 and includes Plaintiff's complaint that he is not receiving post-operative pain medication. On November 14, 2018, the grievance was processed and returned to Plaintiff with a note that he "failed to attach an [ ] RTSM." (Dkt. No. 109 at 14, No. 123-1 at 14.) There is no record evidence that Plaintiff further pursued the administrative process for this returned grievance.

Last, Step 1 Grievance Form BRCI-0897-18 (supplied by Plaintiff and Defendants) is dated November 1, 2018 and includes a similar complaint of not receiving pain medication. On November 15, 2018, the Warden responded to this grievance as "resolved" on the basis that Plaintiff was seen by the medical staff subsequent to his complaint, which Plaintiff checked he did not accept and was appealing on November 21, 2018. (Dkt. No. 109-3 at 1-2, No. 123-1 at 12-13.) There is no record evidence that Plaintiff included a Step 2 Grievance Form with his

---

[3] Relevant to this grievance, Warden Stephon states in his affidavit that Plaintiff "can come out of his cell on Monday, Wednesday and Friday to shower" or to "use the law library, to go to sick call," and "if he has an Order to Report anywhere inside the prison or outside the prison, such as outside medical appointments or court hearings." (Dkt. No. 123-1 at 2-3.) The Court notes that exiting a cell to walk to other areas inside a prison, such as a shower or a library, is not tantamount to breathing "fresh air."

rejection and appeal at all, let alone before his Complaint dated November 13, 2018. (Dkt. No. 1 at 7.)

Construing the facts and their reasonable inferences in favor of Plaintiff, Defendants have met their burden of demonstrating that he did not exhaust the SCDC grievance procedure, relating to complaints of recreation time and prescription pain medication, prior to bringing suit. *See, e.g.*, *Williams v. Reynolds*, 2013 WL 4522574, at *4 (D.S.C. Aug. 27, 2013) (adopting R & R to granting defendants summary judgment where no record evidence that plaintiff filed a Step 2 Grievance after returned Step 1 Grievance); *Bryan v. S.C. Dep't of Corrs.*, 2009 WL 702864, at *3 (D.S.C. Apr. 28, 2008) ("The fact that a grievance was unprocessed, without more, is insufficient to show [that defendants] prevented [plaintiff] from exhausting his administrative remedies.").

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R as the Order of the Court (Dkt. No. 133) and **GRANTS** Defendants' motions for summary judgment (Dkt. Nos. 103, 109, 110).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

January 16, 2020
Charleston, South Carolina